Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
for the WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES CUBBAGE,<br><br>            Plaintiff,<br><br>v.<br><br>THE TALBOTS, INC. AND SMARTREPLY, INC.,<br><br>            Defendants. | **NO. C09-911BHS**<br><br>NOTICE OF APPEAL |

JAMES CUBBAGE, plaintiff, seeks review by the United States Court of Appeals for the Ninth Circuit, of the Order [1] signed on July 7, 2010 and the Judgment of July 9, 2010. A copy of the Order and Judgment is attached to this Notice.

Counsel for defendants are:

Bradley Maxa
Gordon Thomas Honeywell
Malanca Peterson Daheim
1201 Pacific Avenue
Suite 2100
Tacoma, WA 98401
(253) 620-6500

---

[1] The Order granted the Defendants' Motion for Summary Judgment.

NOTICE OF APPEAL - 1
(C09-911BHS)



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

| | |
|---|---|
| 1 | David Bertoni |
| 2 | Brann Isaacson LLP |
|   | PO Box 3070 |
| 3 | Lewiston, ME |
|   | (207) 786-3566 |
| 4 | |
| 5 | Stacy Stitham |
|   | Brann Isaacson LLP |
| 6 | PO Box 3070 |
|   | Lewiston, ME |
| 7 | (207) 786-3566 |
| 8 | |
|   | William Raney |
| 9 | Copilevitz & Canter LLC |
|   | 310 W 20th St, Suite 300 |
| 10 | Kansas City, MO 64108 |
|    | (816) 472-9000 |
| 11 | |
| 12 | Stellman Keehnel |
|    | DLA Piper LLP |
| 13 | 701 Fifth Avenue |
|    | Suite 7000 |
| 14 | Seattle, WA 98104 |
| 15 | (206) 839-4800 |
| 16 | |
| 17 | |
|    | Dated: July 19, 2010 |
| 18 | |
|    | WILLIAMSON & WILLIAMS |
| 19 | |
|    | _(signature)_ |
| 20 | Rob Williamson, WSBA No. 11387 |
|    | Kim Williams, WSBA No. 9077 |
| 21 | 187 Parfitt Way SW, #250 |
|    | Bainbridge Island, WA 98110 |
| 22 | Telephone: (206) 780-4447  Fax: (206) 780-5557 |
|    | Email: roblin@williamslaw.com |
| 23 |        kim@williamslaw.com |
| 24 | *Attorneys for Plaintiff* |
| 25 | |
| 26 | |

NOTICE OF APPEAL - 2
(C09-911BHS)



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES CUBBAGE,<br><br>  Plaintiff,<br><br>  v.<br><br>THE TALBOTS, INC. AND SMARTREPLY, INC.,<br><br>  Defendants. | Case No. C09-911BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant The Talbots, Inc.'s ("Talbots") motion for summary judgment. Dkt. 53. Defendant SmartReply, Inc. ("SmartReply") joins the motion for summary judgment. Dkt. 57. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file, and **GRANTS** the motion as discussed herein.

## I. INTRODUCTION AND BACKGROUND

Plaintiff James Cubbage ("Cubbage") has brought this action against Talbots and SmartReply asserting causes of action for violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, et seq., and the Washington Automatic Dialing and Answering Devices Act ("WADAD"), RCW 80.36.400. Plaintiff also asserts a claim for

ORDER - 1

violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, et seq., and seeks declaratory relief pursuant to RCW 7.24.010.

The material facts are undisputed. Cubbage and his wife Lea Mitchell ("Mitchell") live in Olympia, Washington. The residential telephone, which is registered in Cubbage's name with Qwest, is utilized by both Cubbage and Mitchell. The telephone has been in place since they purchased their home in 1992, with the same telephone number.

On Wednesday, April 29, 2009, Cubbage came home in the middle of the afternoon when his wife was not at home, and listened to the messages on the couple's answering machine. He heard the following prerecorded message:

> Hi, it's Julie calling from Talbots with a reminder that you have only a few days left to take advantage of your exclusive 20% savings pass and free shipping offer. Now through this Saturday, May 2nd enjoy 20% off your merchandise purchase every time you shop Talbots and free shipping when you order online at Talbots.com or through our catalog at 1-800-Talbots. Plus class awards members earn double points on their purchases through May 2nd too. For more information or to choose whether to receive future messages about exclusive offers and promotions, call 1-800-699-4051. Spring is in full bloom at Talbots. Shop early and often for the best selection of our latest fashions. Can't make it into the store? Simply use the offer code on your savings pass when you call 1-800-Talbots or shop at Talbots.com by May 2nd. Thank you for shopping at Talbots.

Dkt. 63.

It is undisputed that this recorded message was intended for Mitchell and provided information regarding an upcoming sales event at a local Talbots store. This call was made by SmartReply in the course of a marketing contract with Talbots. The call was placed from outside the State of Washington and entirely automated in nature. There was no means for the listener to interact with a live operator.

Talbots only collects telephone numbers directly from customers and not from any third-party sources. Customer phone numbers are obtained when a customer places a catalog order by phone, when a customer makes an on-line purchase, and when the number

ORDER - 2

is provided to the sales representative at the point of sale. Mitchell is an occasional shopper at Talbots, her most recent retail purchase at a Talbots store having occurred on February 7, 2009. Mitchell cannot recall whether she provided her phone number to the store representative at the point of sale. Mitchell had made an on-line purchase from Talbots approximately five to six years previously.

Cubbage's reaction to the prerecorded solicitation was annoyance and irritation at the disruption. He believed this type of solicitation unlawful and commenced this action. His spouse, Mitchell, is not a party to the suit.

The Defendants move for summary judgment on the basis that (1) the TCPA claim lacks merit due to the established business relationship with the intended recipient of the call, Mitchell, and (2) the elements of a WADAD claim are lacking and/or this state law claim is preempted by federal law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the

ORDER - 3

differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### III. TCPA

The TCPA prohibits the use of automatic dialing and announcing devices without the prior express consent of the recipient. Defendants argue that the telephone call to Mitchell and received by Cubbage was permissible because Talbots had an established business relationship ("EBR") with Mitchell. Cubbage presents two arguments that Defendants cannot rely on the EBR exemption. First, Cubbage asserts that he did not have an EBR with Talbots and he was the recipient of the call, not his wife. Second, Cubbage argues that the EBR exemption is invalid as the Federal Communications Commission ("FCC") was without authority to enact the exemption.

ORDER - 4

A.  **The Established Business Relationship Exemption**

Under the TCPA, it is:

> unlawful for any person . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [FCC] . . . under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B). A plain reading of this provision indicates that automated messages are prohibited without the prior express consent of the recipient unless the call falls into one of two categories: (1) the call is initiated for emergency purposes; or (2) the call is exempted by rule or order of the FCC. The FCC subsequently adopted an EBR exemption to the TCPA's general prohibition of prerecorded telephone calls. This exemption provides that calls using a "prerecorded voice to deliver a message" can lawfully be made to any person with whom the caller has an EBR. 47 C.F.R. 64.1200(a)(2). Under the FCC's regulations, an EBR is defined as a prior or existing relationship formed on the basis of the subscriber's purchase or transaction with the entity within the eighteen months immediately preceding the date of the telephone call. *See* 47 C.F.R. § 64.1200(f)(4).

In this case, Mitchell purchased at least one product at a Talbots store within the eighteen months prior to April of 2009, the date of the call. Therefore, Mitchell and Talbots had an established business relationship.

Plaintiff does not dispute that his wife had an EBR with Talbots, and there is no evidence disputing the fact that the prerecorded call was intended for Mitchell; nor is there any dispute that as husband and wife, Cubbage and Mitchell shared the household phone and its attendant phone number.

It is Cubbage's contention that because he does not have an EBR with Talbots and it was he who listened to Talbots' phone message, the EBR exemption does not apply and a violation of the TCPA has occurred.

ORDER - 5

The Court disagrees. It is the Court's finding that when one member of a household creates an EBR, that consent or relationship extends to calls to that person's telephone number, regardless of who happens to pick up the phone (or, as in this case, who listens to the answering machine). Through the creation of an existing business relationship, Talbots had the "consent of the called party," Mitchell, to place prerecorded messages to her telephone number. The fact that her husband answered the call does not alter the legal authority to place the call. Accordingly, the Court finds that the single call made to Mitchell and received by her husband, Cubbage, is not in violation of the TCPA as compliant with an EBR exemption.

**B.   Judicial Review of the EBR Rule**

Cubbage contends that even if the Talbots' call is subject to the EBR exception, the call nonetheless violates the TCPA because the FCC lacked the authority to enact the EBR exemption. The Court finds that it is without authority to review the validity of the exemption[1] and thus is bound to apply the exemption as enacted.

The Hobbs Act, 28 U.S.C. § 2342, gives the federal courts of appeal exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or determine the validity of all final orders of the FCC made reviewable by 47 U.S.C. § 402(a). *US West Commc'ns, Inc. v.*

---

[1] Cubbage argues in surreply that Defendants cannot raise for the first time in a reply brief the issue of lack of district court jurisdiction to decide whether FCC regulations are valid. The Court disagrees. It is in Cubbage's response to the motion for summary that the issue of the validity of the FCC regulation is first raised. Defendants merely responded to this argument by asserting the Hobbs Act precludes this Court's review of the validity of the regulation. Defendants cannot be faulted for not raising the issue of the validity of a regulation supports their position on summary judgment. In other words, Defendants are not required to anticipate the Cubbage's defense to the motion for summary judgment. The reply properly presented matters related to the response.
 The Court also rejects Cubbage's argument that SmartReply cannot "join" in Talbots' reply and also file a separate reply brief.

ORDER - 6

*Hamilton,* 224 F.3d 1049, 1054 (9th Cir. 2000). Section 402(a), in turn, encompasses any proceeding to enjoin, set aside, annul, or suspend any order of the FCC under the Communications Act of 1934, as amended by the Telecommunications Act of 1996, with exceptions not relevant here. *Id.* Together, these two statutes vest the courts of appeal with exclusive jurisdiction to review the validity of FCC rulings. *Id.*; *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396-97 (9th Cir. 1996). Aggrieved parties may invoke this exclusive jurisdiction only by filing a petition for review of the FCC's final order in a court of appeals naming the United States as a party. *Id.*; *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1120 (9th Cir. 1999).

The FCC's regulation creating the EBR exemption from TCPA's prohibition against prerecorded solicitation calls is a "final order" within the meaning of the Hobbs Act governing judicial review of FCC orders. See *Biggerstaff v. F.C.C.*, 511 F.3d 178 (D.C. Cir. 2007); *Gottlieb v. Carnival Corp.*, 635 F. Supp. 2d 213, 220-21 (E.D.N.Y. 2009).

Accordingly, this Court may consider whether the EBR exemption applies to the particular facts of this case. However, the Court lacks jurisdiction to consider the validity of the EBR as a rule. Therefore, Defendants are entitled to summary judgment on the TCPA claim.

## IV. WADAD

Cubbage asserts a state law claim pursuant to the WADAD, RCW 80.36.400. The statute provides:

> (1) As used in this section: (a) An automatic dialing and announcing device is a device which automatically dials telephone numbers and plays a recorded message once a connection is made. (b) Commercial solicitation means the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods or services.
> (2) No person may use an automatic dialing and announcing device for purposes of commercial solicitation. This section applies to

ORDER - 7

> all commercial solicitation intended to be received by telephone customers within the state.
> (3) A violation of this section is a violation of chapter 19.86 RCW. It shall be presumed that damages to the recipient of commercial solicitations made using an automatic dialing and announcing device are five hundred dollars.

The WADAD bars the use of automated dialing and announcing devices for purposes of commercial solicitation. Defendants pose two grounds for finding the statute inapplicable to this action. First, they contend there was no violation of the statute and second, the Defendants argue that the WADAD is preempted by the TCPA.

### A.  Elements of a WADAD Violation

Defendants contend that there has been no violation of the WADAD because the call was not intended to, and could not, initiate a "telephone conversation." The Defendants premise this argument on the language of RCW 80.36.400(1)(b), which defines commercial solicitation as "the unsolicited *initiation of a telephone conversation* for the purpose of encouraging a person to purchase property, goods or services." (Emphasis added.) Thus, in order to violate RCW 80.36.400, it must be shown that the recorded message was an initiation of a telephone conversation.

Where the language of a statute is plain and unambiguous, the Court ascertains the statute's meaning from the statute itself. *Lewis v. State, Dept. of Licensing*, 157 Wn.2d 446, 465 (2006). While the statute in question does not define conversation, the term "conversation" has a plain meaning. To determine the plain meaning of an undefined word, the Court may look to its dictionary definition. *Armantrout v. Carlson*, 166 Wn.2d 931 (2009); *Garrison v. Washington State Nursing Bd.*, 87 Wn.2d 195, 196 (1976). If not otherwise defined by statute, the ordinary meaning includes the dictionary definition. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9 (2002); *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183 (2000).

ORDER - 8

1    Dictionary definitions of the word "conversation" are clear and consistent. A
2 conversation is an "informal interchange of thoughts, information, etc., by spoken words;
3 oral communication between persons; talk; colloquy," or "an instance of this." Random
4 House Dictionary (2010). It is the "informal interchange of thoughts, information, etc., by
5 spoken words; oral communication between persons; talk; colloquy." Webster's New
6 Universal Unabridged Dictionary (1996). Conversation is "an informal exchange of news
7 and ideas between two or more people." Compact Oxford English Dictionary (3rd Rev. Ed.
8 2008).

9    It is evident from these definitions that the mere transmittal of a recorded message is
10 not a conversation. The prerecorded call did not initiate a spoken exchange between two or
11 more people.

12   Plaintiff asserts that such an interpretation eviscerates the statute and nullifies its
13 purpose of protecting Washington citizens and businesses from automated solicitation calls.
14 However, as noted by Talbots, a distinction may be made between prerecorded calls that
15 initiate conversation and those that simply convey information without interaction with the
16 recipient. The statute prohibits the use of automatic dialing announcing devices to contact
17 persons and play recordings in the hopes of initiating a conversation with a live operator
18 (e.g., to make a sales pitch). While calls that play tapes and then simply hang up (as here)
19 would be disruptive to those who do not wish to receive them, they do not
20 consummate a transaction or present the risks attendant to high-pressure sales tactics after
21 the recording is completed. It is therefore logical that the legislature would be most
22 concerned with those calls that combined the use of automated dialing messages with the
23 risks posed by conversation with a live solicitor seeking to consummate a sales transaction
24 over the telephone.

25

26 ORDER - 9

Regardless of the intended purpose of the legislation, the Court may not add language to a clear statute, even if it believes the Legislature intended something else but failed to express it adequately. See *Cerrillo v. Esparza*, 158 Wn.2d 194, 201 (2006); *Kilian v. Atkinson*, 147 Wn.2d 16, 20 (2002).

Here, the automated call simply provided information (albeit, a solicitation to purchase goods at Talbots), without the ability of the caller or recipient of the call to engage in conversation. The call merely delivered a recorded message and provided no means whatsoever to have a telephone conversation with a live operator, or anyone else. Because the call could only deliver a recorded message, and because, as a result, no "telephone conversation" could ensue, no violation of RCW 80.36.400 has been shown. Accordingly, Defendants are entitled to summary judgment on the state law claims.[2]

**B.     Federal Preemption of WADAD**

Because Cubbage has not established the elements of a claim for violation of the WADAD, RCW 80.36.400, the Court will not address Defendants' argument that RCW 80.36.400 is preempted by the TCPA, 47 U.S.C. § 227, et seq.

## V. ORDER

Accordingly, it is hereby **ORDERED** that Talbots' Motion for Summary Judgment (Dkt. 53) is **GRANTED**. All claims against Talbots and SmartReply, Inc. are **DISMISSED with prejudice.**

DATED this 7th day of July, 2010.

BENJAMIN H. SETTLE
United States District Judge

---

[2] Cubbage's CPA claim is premised on a violation of RCW 80.36.400. There being no violation of RCW 80.36.400, there can be no CPA violation.

ORDER - 10

# United States District Court

WESTERN DISTRICT OF WASHINGTON

JAMES CUBBAGE,

      Plaintiff,

v.

THE TALBOTS, INC., and SMARTREPLY, INC.,

      Defendants.

JUDGMENT IN A CIVIL CASE

CASE NUMBER: C09-0911BHS

___ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

_XX_ **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

THE COURT HAS ORDERED THAT:

Talbots' Motion for Summary Judgment (Dkt. 53) is **GRANTED**.
All claims against Talbots and SmartReply, Inc. are **DISMISSED with prejudice**.

Dated this 9th day of July 2010.

                                      /s/ Bruce Rifkin
                                      Clerk

                                      /s/Gretchen Craft
                                      Deputy Clerk